**ITL INTERNATIONAL, INC.,**
**et al., Plaintiffs,**

v.

**WALTON & POST, INC., Defendant.**

**No. 10–22096–CV–GRAHAM/TORRES.**

United States District Court,
S.D. Florida,
Miami Division.

Sept. 29, 2010.

James M. Miller, Alexandra Mora, Akerman Senterfitt, Miami, FL, Michael P. So-

carras, McDermott Will & Emery LLP, Washington, DC, Counsel for Plaintiffs.

Alvin B. Davis, Pedro J. Martinez-Fraga, Leah B. Storie, Pierrre H. Bergeron, Squire, Sanders & Dempsey LLP, Miami, FL, for Defendant.

## ORDER

DONALD L. GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Defendant Walton & Post, Inc.'s Motion to Dismiss the First Amended Complaint [D.E. 19].

**THE COURT** has considered the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons set forth herein, the Motion to Dismiss is granted.

## I. BACKGROUND

### A. Facts as Alleged in the Complaint

Although Plaintiffs chose to file their Complaint in the Southern District of Florida, the majority of the events described in their Complaint relate to ongoing litigation in the Dominican Republic.

### 1. The Parties

Plaintiffs, ITL International, Inc., doing business as MARS Caribbean and Central America, formerly doing business as Master Foods Interamerica ("Master Foods"), Mars, Incorporated ("Mars") and WM. Wrigley Jr. Company ("Wrigley")(collectively the "Plaintiffs") and their affiliates manufacture and sell various products in the United States and worldwide. None of the Plaintiffs are Florida Citizens. Defendant Walton and Post ("Walton & Post") is an international wholesale distributor located in Miami, Florida.

## 2. The Importer Agreement

In December 1987, Master Foods and Walton & Post entered into an Importer Agreement, whereby Master Foods appointed Walton & Post as the sole Importer in the Dominican Republic of Plaintiffs' products (the "Agreement"). The Agreement contained, among others, the following provisions:

> This Agreement shall continue until either party gives at least three months written notice of termination after the first six (6) months. Upon termination neither party may claim compensation or damages of any sort from the other party. If, despite the foregoing, the Importer is by law entitled to such compensation or damages, the parties hereby agree to settle all claims by a payment of up to a maximum of five percent (5%) of the value of the Products free on board (FOB) paid for by Importer within the twelve (12) months preceding termination.
>
> Agreement ¶ 1.
>
> [Defendant] will actively promote the development of the market and sales of Products in the Territory. In this connection you will act in accordance with written instructions we may issue and will not do anything that might prevent sales or interfere with such development.
>
> Agreement ¶ 2.
>
> Upon termination of this Agreement, you will not do or cause to be done anything which might interfere with or affect the importation, distribution or sales of Products in the Territory.

Agreement ¶ 15.

## 3. Termination of the Agreement

In March 23, 2007, Master Foods provided written notice to Walton & Post of its intent to terminate the agreement. As a result, Plaintiffs assert the termination became effective on June 24, 2007.

## 4. The Dominican Actions

On March 8, 2007, Walton & Post filed a lawsuit under Dominican Law No. 173 claiming that it qualified for the protection afforded under that law as the exclusive distributor of MAR's products in the Dominican Republic.[1] The action sought a) an order requiring the Central Bank of the Dominican Republic to register Walton & Post as the exclusive distributor of Mars products in Dominican Republic and b) an order reversing the Central Bank's decision to register Master Foods Dominicana, S.A. as the exclusive distributor of Mars products in the Dominican Republic.

On March 12, 2007, Walton & Post filed a second action in the same court, also under Dominican Law No. 173, seeking compensation for termination plus attorneys fees and costs against Master Foods, its affiliates Master Foods Dominicana, C. Por A., and Mars, Inc.

The Dominican trial court dismissed both of the actions. In April 2010, a Dominican Republic court of appeals reversed the trial court decision and found the Defendants in the Dominican action, including Master Foods, jointly and severally liable to pay the equivalent of US$14 million in termination damages plus costs including attorneys' fees. This decision is on appeal to the Supreme Court of the Dominican Republic.

In May, 2010, Walton & Post procured the issuance of extrajudicial liens, called "embargos" in the Dominican Republic, attaching the property of Master Foods and its affiliates.

---

**1.** Dominican Republic Law No. 173, in certain circumstances, affords local distributors a right to receive certain compensation from foreign manufacturers upon termination.

### 5. Southern District of Florida Litigation

After the unfavorable rulings in the Dominican Republic, Plaintiffs filed the instant action, asserting Walton & Post has breached the Agreement by seeking compensation upon termination and by causing things to be done that affect the importation, distribution and sale of products in the territory. In addition, Plaintiffs assert that Walton & Post has infringed on the Mars trademarks by using them on its website.

### B. Procedural Background

On July 26, 2010, Plaintiffs filed their First Amended Complaint, asserting claims for declaratory and injunctive relief, pursuant to 28 U.S.C. § 2201(a), for breach of contract, trademark infringement under 15 U.S.C. § 1114(1)(a), common law trademark infringement, false designation of origin and false representation or advertising under 15 U.S.C. § 1125(a), unfair competition under 15 U.S.C. § 1125(a), and common law unfair competition. On August 6, 2010, Defendant moved to dismiss on five grounds 1) *res judicata*/collateral estoppel; 2)international comity; 3) *forum non conveniens;* 4) failure to join an indispensable party; and 5) *failure to state a claim upon which relief can be granted.*

## II. DISCUSSION

### A. INTERNATIONAL COMITY

 "International comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws.'" *Ungaro–Benages v. Dresdner Bank AG,* 2003 WL 25729923 (S.D.Fla.2003) (quoting *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895)). Under the doctrine of international comity, even where a court has jurisdiction over a cause, it may abstain from exercising that jurisdiction "where another sovereign's interest in the proceedings is greater than the United States' interests, or when a foreign sovereign has legislated on a matter of its own significant national concern." *Id.* Indeed, "in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." *Turner Entertainment Co. v. Degeto Film,* 25 F.3d 1512, 1518 (11th Cir. 1994).

 Courts generally abstain under the doctrine of international comity where there are parallel proceedings, one in its jurisdiction and another in the foreign jurisdiction. This retrospective application of the doctrine requires courts to consider "whether to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings." *Ungaro–Benages v. Dresdner Bank AG,* 379 F.3d 1227, 1228 (11th Cir.2004). "[O]nce a judgment on the merits is reached in one of the cases ... failure to defer to the judgment would have serious implication for the concerns of international comity." *Id.* at 1521.

 The Eleventh Circuit has identified three factors in determining whether a Court should exercise its discretion and abstain from the exercise of jurisdiction: (i) international comity; (ii) fairness to the litigants and (iii) efficient use of scare judicial resources. *Id.* at 1518.

### 1. International Comity

 Comity concerns include: (1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial, in the

sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just. *Turner*, 25 F.3d at 1519. Plaintiffs do not assert that the Dominican judgment was rendered via fraud or that the Dominican court was not competent. Nor do Plaintiffs argue the foreign judgment is somehow repugnant. Rather, Plaintiffs attempt to argue that the current action is not an attempt to re-litigate the issues raised in the Dominican Republic, but rather, is a separate action enjoining further breaches of contract. The Court disagrees. The parties' rights under the Agreement are at issue in both the Dominican actions and this action. Indeed, Walton & Post's claims under Dominican Law No. 173 relate to the termination of their rights under the **Agreement.** Accordingly, the Court finds Plaintiffs' argument that this action is separate and distinct from the Dominican action without merit.

### 2. Fairness to the Litigants

■ To determine fairness to the litigants, the Court should consider (i) the order in which the suit was filed; (ii) the more convenient forum and (iii) the possibility of prejudice to parties resulting from abstention. *Id.* Walton & Post filed the Dominican action over three years ago. Indeed, Plaintiffs actively litigated the Dominican action for several years, never seeking intervention by this Court. It was only after the Dominican Court of Appeals reversed the trial court that Plaintiffs suddenly needed to proceed in the United States. Accordingly, the Court finds that this factor weighs in favor of abstention.

### 3. Efficient Use of Scarce Judicial Resources

■ In determining whether the action would be an efficient use of scarce judicial resources the Court should consider "(1) the inconvenience of the federal forum, (2) the desirability of avoiding piecemeal litigation, (3) whether the actions have parties and issues in common and (4) whether the alternative forum is likely to render a prompt disposition." *Id.*

The Southern District of Florida is a very busy district. Dismissal of this case would avoid unnecessary problems with piecemeal litigation. The actions certainly have parties and issues in common. Indeed, the parties and the issues are virtually identical. Finally, the Dominican courts have already reached final judgment. Clearly, this factor weighs in favor of abstention.

Based on these factors, the Court shall abstain from exercising jurisdiction over this matter. The issues to be resolved are simply too similar to the prior action in the Dominican Republic for this Court to justify expending its resources to manage a case clearly suited for the Dominican Republic courts.[2]

### III. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant, Walton & Post, Inc.'s Motion to Dismiss the First Amended Complaint [D.E. 19] is **GRANTED.** It is further

**ORDERED AND ADJUDGED** that the Second Amended Complaint is **DISMISSED.** It is further

**ORDERED AND ADJUDGED** that this action shall be **CLOSED** for administrative purposes, and any pending motions are **DENIED** as moot.

---

**2.** Because the Court has decided to abstain from exercising jurisdiction on the basis of international comity, it does not reach Walton & Post's other grounds for dismissal.